IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMIR A. AL-DABAGH | ) | CASE NO. |
| | ) | |
| | ) | JUDGE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF AMIR AL-DABAGH** |
| | ) | |
| CASE WESTERN RESERVE UNIVERSITY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes Amir A. Al-Dabagh, and being an adult of sound mind, hereby swears and avers that the following is true and accurate to best of his personal knowledge and belief:

1. I maintain my permanent residence in Flushing, Michigan.

2. Attached to hereto is a true and accurate copy of my CV. A copy of this CV was included in my student file from the Case Western Reserve University ("CWRU") School of Medicine, which was provided to me by Dean Robert Haynie, M.D., on or about April 21, 2014.

3. In 2009, I applied for admission into the CWRU School of Medicine and was accepted. I began as a medical student at CWRU in the fall of 2009.

4. The CWRU Medical School Basis Course Work & Clinical program includes scholarship, research and clinical work throughout the program. Generally, most of the students' first two years are spent in classroom, small group and private scholarship. During the third, fourth and optional fifth years of the program, the students are primarily engaged in clinical work and research.

5. From 2009 until the present, I satisfactorily completed all of the requirements of the CWRU School of Medicine to receive my medical degree and diploma.

6. The medical program at CWRU permits students to add an optional fifth year to the program to pursue independent activities such as research. From June 2012 to June 2013, with the approval of Dean Haynie, I used such an optional fifth year to perform research at Wake Forest University in North Carolina.

EXHIBIT 1

7.   On or before April 10, 2014, I successfully completed the United States Medical Licensing Examination ("USMLE") Step 1 and Step 2 Clinical Knowledge ("CK") and Clinical Skills ("CS").

8.   On or before April 10, 2014, I satisfactorily completed my MD thesis requirement for the CWRU School of Medicine.

9.   At all times, I met all financial obligations to CWRU in a timely fashion. To date, more than $140,000 has been paid by me or on my behalf to CWRU in tuition for Medical School.

10.  During my four years at the CWRU School of Medicine, I addressed issues before the CWRU Medical School Committee on Students ("COS") three times.

11.  In January 2012, I learned of accusations against me that I had allegedly inappropriately touched the buttock of a female student and was involved in a verbal altercation with her boyfriend at the Hippo Ball. As I told the COS, I never engaged in any such behavior.

12.  Multiple faculty members of the School of Medicine were present at the Hippo Ball that night, and, to my knowledge, none ever reported observing such events or received reports of the same being at the Ball.

13.  When I left the Ball, I took a cab home. I recall that the cab driver asked me if I had enough money for the fare on me and I told him that I had more than sufficient cash to cover the fare. I recall exiting the fully stopped cab, then waking up at Metro Hospital, where I was informed I had suffered significant head trauma. The cash and credit cards in my wallet were missing.

14.  I had consumed a few alcoholic beverages before the Hippo Ball, but by no means a quantity that would cause me to lose consciousness at any point in time (much less hours later). I did not black out getting out of the cab. In addition, as I informed the Metro Hospital staff, the suggestion that I jumped out of a moving cab is absurd. I had cash and credit cards on me that would have more than covered the cab fare. Based on all of the circumstances and my memory of that evening, it is my opinion to a reasonable probability that someone assaulted me as I was exiting the cab.

15.  My second contact with the COS occurred in connection with an internal medicine internship I completed from September 23, 2013 to October 10, 2013.

16.  On or about November 1, 2013, I completed what I understood would be a confidential and anonymous evaluation in which I expressed his dissatisfaction

of the internship.  I was largely critical of the attitude of one of the supervising, attending physicians, who I will identify as Dr. K.

17.   Dr. K would become easily frustrated with me.  I would then ask for guidance to correct the perceived mistake, and Dr. K would ignore or chastise me for asking too many questions.

18.   Later in the internship, other supervising physicians alerted me to perceived issues with my communication style with patients and other medical staff.  I quickly learned from this instruction and assimilated their instructions into my medical practice.

19.   In November 2013, the COS required me to repeat the internal medicine internship, which I did in December 2013 through January 2014.  I satisfactorily completed the repeat internship.  I satisfactorily completed the gender specific training required by the COS.

20.   On February 3, 2013, I was involved in a single car automobile accident in North Carolina, where I was completing my year of research.

21.   I swerved to avoid a deer on the highway and my car struck a utility pole.

22.   In April of 2013, I underwent a voluntary substance abuse assessment.  The assessment found no evidence of any such conditions.

23.   On April 7, 2014, a trial was held and I was convicted of what I understand to be a minor misdemeanor for driving while intoxicated, with reckless operation added because the vehicle struck a utility pole.

24.   I received the details of the conviction from my attorney, A. Patrick Roberts, on April 9, 2014.

25.   I was sentenced to probation, $340 in fines, 48 hours of community service and additional court costs.  I was also ordered to complete a substance abuse assessment.

26.   I have completed all of the requirements of the North Carolina Court's judgment, including the substance abuse assessment, DUI training, and community service.

27.   On April 11, 2014, I notified my future employers at Riverside Hospital in Columbus, Ohio, where I am scheduled to begin a transitional year residency on June 17, 2014.  I was preparing to inform Dean Haynie of the conviction when it came to my attention that, on or before April 14, 2014, Dean Haynie had been informed of the conviction by Riverside Hospital.

28. If I do not receive my medical degree and diploma from the CWRU School of Medicine by May 17, 2014, I will likely suffer irreparable harm that cannot be rectified with money damages.

29. I am scheduled to begin a one-year transitional residency at Riverside Hospital in Columbus, Ohio, on June 17, 2014. The Riverside residency is highly competitive. Upon completing the Riverside residency, I am scheduled to begin a prestigious dermatology residency at the State University of New York ("SUNY") Downstate Department of Dermatology in the summer of 2015. The SUNY residency is contingent upon my completing the Riverside residency.

30. If I do not receive the medical degree and diploma on or before May 18, 2014, I will likely lose the Riverside residency. At that point, my carefully planned career path in dermatological medicine, which to date includes numerous publications, society memberships and contacts, will be effectively destroyed.

31. Even if I am later awarded my degree and diploma, because of the termination of the Riverside residency, I will be effectively unable to obtain a commensurate residency through the MATCH program, a ubiquitous program used by medical students nationwide to obtain medical residencies at respected institutions in the United States. I will be effectively unable to receive the medical training needed to be recognized as a world-class dermatologist. No amount of money can compensate for the destruction of my unique career plans and dreams.

FURTHER DECLARANT SAYETH NAUGHT.

_____
AMIR A. AL-DABAGH

Sworn to and subscribed before me on this 14th day of May, 2014.

_____
NOTARY

Peter A. Holdsworth, Esq.
Notary Public, STATE OF OHIO
My commission has no expiration
Recorded in Cuyahoga County