# EXHIBIT T



# YOUR REPORT
### FROM THE STATE MEDICAL BOARD OF OHIO

**SUMMER 2006**

**The State Medical Board**

**President**
Andrew F. Robbins, Jr., M.D.
Cincinnati

**Vice President**
Deepak Kumar, M.D.
Dayton

**Secretary**
Lance Talmage, M.D.
Toledo

**Supervising Member**
Raymond J. Albert
Amanda

R. Gregory Browning, Ph.D.
Columbus

David S. Buchan, D.P.M.
Columbus

Patricia J. Davidson, M.D.
Columbus

Carol L. Egner, M.D.
Cincinnati

Dalsukh A. Madia, M.D.
Marion (appointed 5/06)

Kamala Saxena, M.D.
Columbus (term ended 3/06)

Anquenette Sloan
Columbus

Anita M. Steinbergh, D.O.
Westerville

Nandlal Varyani, M.D.
Middleburg Heights

**Executive Director**
Richard Whitehouse, J.D.

## *The Ethics of Co-Management*

Co-management has evolved over the years. Today, the practice of dividing responsibilities for patient care among various caregivers can create an ethical quagmire when the potential for personal financial gain influences patient care decisions.

The original purpose of surgical co-management of patients was to provide continuity of care when the operating surgeon was unavailable to provide post-op care, or when the patient was unable to travel to the surgeon for follow-up care. This increases communication between providers, improves access to care, and expands care options in underserved areas.

Problems arise when professional ethics are compromised and co-management arrangements are based upon financially advantageous relationships between two providers. Payment by or to a physician solely for the referral of a patient, commonly referred to as fee-splitting, is unethical. Surgical co-management arrangements with another physician or caregiver in return for some financial gain may jeopardize your medical license.

The State Medical Board, through Rule 4731-18-01, Ohio Administrative Code, outlines how the operating surgeon may delegate defined aspects of post-operative care to other qualified physicians, allied health professionals, or licensees of other health regulatory boards who are licensed to independently provide the scope of practice and level of care needed by the patient. The American Medical Association Code of Ethics opinion E-8.043 *Ethical Implications of Surgical Co-Management* defines guidelines for this practice.

Patient care must always be the primary concern for medical professionals. If we place financial concerns above patient care, we fail our patients, our profession, and ourselves. It is incumbent that we abide by the highest ethical standards and strive for the highest quality of care possible.

*Andrew F. Robbins Jr.*

Andrew F. Robbins, Jr., MD
President

### Inside **YOUR REPORT**

| | |
|---|---|
| From the Secretary's Desk - Defining Professionalism | 2 |
| Sub SB 154 Changes PA Practice in Ohio | 3 |
| Board Sets Strategic Plan - A message from the Executive Director | 7 |
| Disciplinary Sanction Definitions | 8 |
| Disciplinary Action Listing - April 2005 through April 2006 | 9 |
| Licensees Regulated by the Medical Board | 23 |

*From the Secretary's Desk*

# Defining Professionalism

By Lance Talmage, MD
Secretary, State Medical Board of Ohio

Many articles have been written recently expressing concern with the seeming decline of professionalism within the medical profession. Medical regulation by medical boards and professional organizations are increasingly focused on establishing standards of professional behavior. The Liaison Committee on Medical Education has promulgated and enforced the requirement that professionalism and its evaluation be part of the medical school curriculum. Those of us who review and evaluate complaints by patients or their families are seeing greater numbers of complaints claiming indifference, delayed response, curt language, and hurried clinical care.

Some blame working conditions, practice economics, unrealistic patient expectations, and the general decline of civility in our society as reasons for this decline in professionalism. The fact remains that physicians and other licensees have very intimate specialized knowledge about our patients who depend on us to allay their fears and relieve their distress. The penalties we pay for declining professionalism include irate phone calls, verbal confrontations, diminished community reputation, and ultimately, medical board investigations or lawsuits. From medical school until retirement, we must recognize and nurture the special relationship we have with patients. It is our professional obligation.

There are three issues we must keep in mind:
1) What are the characteristics of professionalism?
2) What personal barriers and attitudes diminish our professionalism? and, 3) How can we better communicate professionalism to our patients?

The American Board of Internal Medicine (ABIM) issued a well thought out paper identifying six characteristics of professionalism:

- Altruism
- Accountability
- Excellence
- Duty
- Honor and integrity,
- Respect of patients, colleagues, and assistants

The ABIM also recognized the following attitudinal pitfalls which erode professionalism:

- Abuse of power
- Arrogance
- Greed
- Impairment
- Lack of conscientiousness
- Conflict of interest
- Misrepresentation by commission or by omission

If we adopt the characteristics of professionalism, yet ignore the attitudinal pitfalls, should we ever be considered "professional"? To truly be professional, we need to embrace the key characteristics and prevent the attitudinal pitfalls by talking with and listening to our patients. We need to remember that patients don't converse in the language of medicine, with its many acronyms, that is second nature to us. Often, a patient may be embarrassed or unwilling to admit that they don't understand the information we are telling them. Other patients are reluctant to ask questions because we have made it clear that our time is valuable and short. We inadvertently diminish their worth by interrupting (an average of 17 seconds into their chief complaint), avoiding eye contact, and using body language which indicates we have no time for them. We must be mindful of these behaviors and attitudes. Simple adjustments can vastly improve physician-patient relationships.

The prescription for such ill practice — sit, listen, explain, ask for questions, and check for understanding. Take the time to communicate more effectively. This simple approach can raise the professionalism bar for our profession.

*Lance A. Talmage, M.D.*

Lance A. Talmage, M.D.
Secretary

---

## Have You Moved?

State law requires you to notify the Board of your change of address within 30 days

Use the change of address form on the website

**MED.OHIO.GOV**